**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARY EBAUGH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:23-cv-209-MTS |
| | ) | |
| MEDICREDIT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Medicredit Inc.'s Motions to Dismiss, Doc. [8], under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Plaintiff Mary Ebaugh sued Defendant for unfair debt-collection practices alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). Doc. [1]. For the following reasons, the Court grants the Motion and concludes Plaintiff lacks standing.

I.    **BACKGROUND**

Plaintiff "fell behind on paying her bills" for medical services. Doc. [1] ¶ 7. On July 26, 2022, Defendant sent Plaintiff a collection letter demanding payment for medical bills. *Id.* Subsequently, Plaintiff reached out to "her legal aid attorneys." *Id.* ¶ 8. On August 31, 2022, Plaintiff's "legal aid attorneys informed Defendant, in writing, that [Plainitff] was represented by counsel and that she refused to pay the debt; the letter further directed [Defendant] to cease contacting her, and to cease all further collection activities regarding the Dominion Hospital debt." *Id.* Thereafter, Defendant sent Plaintiff a letter with a settlement offer equal to a 50% discount on the original debt (the "Letter").[1] *Id.* ¶ 9.

---

[1] The Letter also states: "This communication is from a debt collector and is an attempt to collect a debt." Doc. [1-4].

Based on these facts, Plaintiff filed suit against Defendant, asserting two claims under Section 1692c of the FDCPA.  Doc. [1] ¶¶ 16–23 (citing 15 U.S.C. §§ 1692c(c) & 1692c(a)(2)).[2] Specifically, Plaintiff alleged Defendant violated the FDCPA by sending her the Letter after it received Plaintiff's cease-and-desist letter, *id.* § 1692c(c) (Count I), and after it knew Plaintiff was represented by an attorney, *id.* § 1692c(a)(2) (Count II).  *Id.*  Plaintiff's claimed injuries are that "Defendant's collection actions alarmed, confused and emotionally distressed [Plaintiff] (loss of sleep, worry), invaded her right to privacy, caused her to act to her detriment, and cost her out-of-pocket expenses."  *Id.* ¶ 14.  In the current Motion, Defendant argues Plaintiff has not alleged a particularized, concrete injury in-fact, and therefore, she lacks Article III standing.  Doc. [8].

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), Defendant asserts the Court does not have subject matter jurisdiction because Plaintiff lacks standing to pursue her claims.  *See* U.S. Const. art. III, § 2.  To establish standing, Plaintiff must show: (i) that she "suffered an injury in fact that is concrete, particularized, and actual or imminent"; (ii) that the injury likely was caused by Defendant; and (iii) that judicial relief likely would redress the injury.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  Plaintiff, as the party invoking federal jurisdiction, "bears the burden of establishing" all three elements, *id.* at 561, though the parties agree that Plaintiff's standing rises and falls with the first element, concrete injury.

"Article III standing requires a concrete injury even in the context of a statutory violation," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016), so alleged violations of the FDCPA "do not alone provide standing," *Bassett v. Credit Bureau Services, Inc.*, 60 F.4th 1132, 1136 (8th Cir.

---

[2] These provisions prohibit, among other things, a debt collector from communicating with a consumer "if the debt collector knows the consumer is represented by an attorney with respect to such debt," 15 U.S.C. § 1692c(a)(2), or when "a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer," 15 U.S.C. § 1692c(c).

2023) (citing *Spokeo*, 578 U.S. at 341).  This is because "under Article III, an injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021).  "[T]he injury-in-fact requirement requires a plaintiff to allege an injury that is both 'concrete and particularized.'" *Spokeo*, 578 U.S. at 341 (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).  "Both tangible and intangible injuries can be concrete." *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 690 (8th Cir. 2017).  The "most obvious" kind of concrete harms are "traditional tangible harms, such as physical harms and monetary harms." *TransUnion*, 141 S. Ct. at 2204.  Intangible harms, on the other hand, are concrete when the plaintiff points "to an injury that 'has a "close relationship" to a harm "traditionally" recognized as providing a basis for a lawsuit in American courts.'" *Bassett*, 60 F.4th at 1136 (quoting *TransUnion*, 141 S. Ct. at 2204)).

## III.   DISCUSSION

Defendant argues Plaintiff has not alleged a particularized, concrete injury in-fact, and therefore, that she lacks Article III standing.  Plaintiff alleges injuries, both tangible and intangible.  While both types of injuries may establish standing under the FDCPA, *see, e.g.*, *Demarais*, 869 F.3d at 692, the Court concludes Plaintiff failed to establish concrete injuries.

As to tangible injuries, Plaintiff's sole allegation is that she suffered "out-of-pocket expenses."  Doc. [1] ¶ 14.  Plaintiff alleges no facts establishing what these expenses are or how they came about.  While Plaintiff correctly points to cases where out-of-pocket expenses have been recognized, Doc. [11] at 11 & n. 4, Plaintiff provides no factual allegations showing that her expenses, too, would confer standing.  *See, e.g.*, *Demarais*, 869 F.3d at 693 (tangible harm from costs for time and money required to defend against unjustified legal action).  Nor does Plaintiff allege facts on which the Court could even infer any tangible expenses here.

As to emotional harm, Plaintiff's allegations on this point are that she was "alarmed, confused and emotionally distressed [] (loss of sleep, worry)."  Doc. [1]  ¶ 14.  Plaintiff's bare allegations are not a cognizable concrete injury.  *Garland v. Orlans, PC*, 999 F.3d 432, 439 (6th Cir. 2021).  Moreover, Courts of Appeals have consistently rejected the theory that emotions, such as "confusion" and "worry," alone, establish concrete injuries.  *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 824 (5th Cir. 2022); *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 939 (7th Cir. 2022); *Garland v. Orlans, PC*, 999 F.3d 432, 438 (6th Cir. 2021).  The Court of Appeals for the Eighth Circuit appears to endorse these holdings such that allegations of "negative emotions," alone, are insufficient to state a cognizable injury under Article III.  *See Ojogwu v. Rodenburg L. Firm*, 26 F.4th 457, 463 (8th Cir. 2022) (citing *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 864 (6th Cir. 2020) & *Pennell v. Global Trust Management, LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021)).

Plaintiff's "invasion of privacy" injury, Doc. [1] ¶ 14, is a closer call, but still fares no better.  Plaintiff argues her injuries are of the same kind held actionable under common law invasion of privacy tort theories.  But, invasion of privacy is not a tort under Missouri law.  Acknowledging this fact, and while not alleged in the Complaint, Plaintiff states in her brief that by "invasion of privacy" she meant that receipt of the Letter was analogous to the tort of intrusion upon seclusion.  Doc. [11] at 6–11.  True, a plaintiff may establish standing through an "intangible" harm if there is a "common-law analogue," *Bassett*, 60 F.4th at 1135, for the plaintiff's asserted injury, such as "intrusion upon seclusion," *TransUnion*, 141 S. Ct. at 2204.  But, even if the Court were to overlook Plaintiff's pleading deficiency and consider her injury based upon a theory of intrusion upon seclusion, Plaintiff did not factually establish a sufficient "close relationship" to support Article III standing.  *TransUnion*, 141 S. Ct. at 2204.

It is true "[m]ost circuits to consider the issue have concluded that a consumer debtor has Article III standing to assert an FDCPA claim that a debt collector's harassing calls or letters invaded a privacy interest protected by the well-established tort of 'intrusion upon seclusion.'" *Ojogwu*, 26 F.4th at 463 n.4.  It is equally true Plaintiff could establish an Article III injury under this privacy theory based on *one* communication.  *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1192 (10th Cir. 2021) ("Though a single phone call may not intrude to the degree required at common law, that phone call poses the same *kind* of harm recognized at common law—an unwanted intrusion into a plaintiff's peace and quiet."); *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 959 (8th Cir. 2019) ("It is not dispositive whether unsolicited telephone calls are actually actionable under any common law tort. . . . in the standing analysis we consider the nature or type of the harm, not its extent."); *Perez*, 45 F.4th at 822; *Ward v. NPAS, Inc.*, 63 F.4th 576, 580–81 (6th Cir. 2023); *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 92–93 (2d Cir. 2019); *Susinno v. Work Out World Inc.*, 862 F.3d 346, 352 (3d Cir. 2017); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 463 (7th Cir. 2020) (Barrett, J.).  This is especially so given the FDCPA violations asserted here are under Section 1692c.[3]  *Ojogwu*, 26 F.4th at 463 n.4 ("We agree that many alleged § 1692c(a)(2) violations will satisfy the Article III requirement of concrete injury in fact.").  The manner of communication, i.e.: the "nature or type of harm," however, is what dooms standing here.  *Golan*, 930 F.3d at 959 ("in the standing analysis we consider the nature or type of the harm.").

---

[3] Unlike the language of § 1692c which is related to consumer privacy, Courts of Appeals reject the use of privacy-related torts to "bootstrap" standing when a plaintiff sues a defendant for violating a FDCPA statutory provision that does not involve privacy.  *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 826 (5th Cir. 2022) (violations of § 1692e do not deal with privacy but instead the "economic harms that consumers suffered due to aggressive and unfair attempts to collect their debts"); *Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, 9 F.4th 357, 362 (6th Cir. 2021) (same because a § 1692e violation of "[f]ailing to receive full and complete information does not closely resemble intrusion upon seclusion").  Moreover, while privacy violations under § 1692d require unwanted communications to be made "repeatedly or continuously," *see* 15 U.S.C. § 1692d, the provisions in § 1692c does not dictate that a violation occurs only when there are multiple post-notice attempts to communicate.  *See Vazzano v. Receivable Mgmt. Servs., LLC*, 3:21-cv-0825-D, 2022 WL 17406317, at *2–3 (N.D. Tex. Dec. 2, 2022).

Plaintiff bases her "invasion of privacy" injury on receipt of the Letter.  While Courts of Appeals hold this type of allegation—mere receipt of the unsolicited communication itself—is enough to demonstrate injury-in-fact, those cases all concern text messages or phone calls.  *See, e.g.*, *Lupia*, 8 F.4th at 1192 (phone call was an injury in fact); *Ward*, 63 F.4th at 580–82 (same); *Melito*, 923 F.3d at 88 (text message was an injury in fact); *Gadelhak*, 950 F.3d at 461–63 (same). Defendant distinguishes invasions of privacy based on a message to one's cellphone from those based on a letter delivered to a mailbox.  Doc. [12] at 3.  Indeed, the Court of Appeals for the Seventh Circuit found this distinction persuasive enough to reject standing on the grounds that a mailbox communication is not "the injury associated with intrusion upon seclusion."  *See Pucillo v. Nat'l Credit Sys., Inc.*, 66 F.4th 634, 640–42 (7th Cir. 2023).  No doubt there are differences between those types of communications; there are harms inherent in messaging one's cellphone that are not similarly present when considering communication via mailbox.  *See, e.g.*, *Pucillo*, 66 F.4th at 641 (explaining texts "can disrupt a person anytime, anywhere," with "undesired buzzing" or "unwanted ringing" but, by contrast, "postal mail is delivered to a mailbox without interrupti[o]n" and can "be picked up when, if, and how often the recipient chooses"); *Lupia*, 8 F.4th at 1192 (explaining a phone call "poses the same *kind* of harm recognized at common law—an unwanted intrusion into a plaintiff's peace and quiet").  The Court stops short of adopting the Seventh Circuit's holding.  Instead, the Court concludes that while delivery of a letter *could* invade privacy, mere receipt of an unsolicited letter, without any other factual allegations, is insufficient to establish injury as the type of intrusive privacy invasion the tort of intrusion upon seclusion seeks to prevent.  *Cf. Ojogwu*, 26 F.4th at 463 n.4 ("the concrete harm inquiry is fact specific.").  In other words, Plaintiff's problem here is that based on the lack of factual allegations in her Complaint, she has not shown that her harm bears a "close relationship," *TransUnion*, 141 S. Ct.

at 2204, to the tort of intrusion upon seclusion, and that is what matters for standing purposes, *Golan*, 930 F.3d at 959.

In conclusion, Plaintiff's bare allegations of injury that stem from receipt of one letter sent in violation of the FDCPA is insufficient to establish standing.  Without a concrete injury in-fact, the Court would be authorizing any plaintiff to sue a defendant for compliance with regulatory law, instead of seeking to remedy harm to his or herself.  *Bassett*, 60 F.4th at 1137 ("An uninjured plaintiff who sues . . . is . . . not seeking to remedy any harm to herself but instead is merely seeking to ensure a defendant's compliance with regulatory law" (quoting *TransUnion*, 141 S. Ct. at 2206)).  Such a result is disharmonious with Article III standing and to the Constitution's separation of powers.  *TransUnion*, 141 S. Ct. at 2206–07.  Because Plaintiff's allegations do not show she suffered a concrete injury in-fact as a result of the alleged statutory violations, she lacks Article III standing.

Accordingly,

**IT IS HEREBY ORDERED** that Medicredit Inc.'s Motions to Dismiss, Doc. [8], is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff may file an Amended Complaint, consistent with this Memorandum and Order, by **August 31, 2023**.  Defendant shall have the usual time to file any required response to any Amended Complaint.  *See* Fed. R. Civ. P. 15(a)(3).

Dated this 17th day of August 2023.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE