UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARY EBAUGH, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )    Case No. 4:23-00209-MTS |
| | ) |
| MEDICREDIT, INC. | ) |
| | ) |
|    Defendant. | ) |

**MEDICREDIT, INC.'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff Mary Ebaugh's Amended Complaint (the **Second Complaint**") should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, or alternatively, under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

### INTRODUCTION[1]

Plaintiff admits that she incurred a debt (ECF Doc.14, Second Complaint ¶ 7). She alleges that in response to a statement from Medicredit, Plaintiff had her (retained) attorney send Medicredit a letter indicating that she could not pay the debt (Doc.14, ¶ 8). Thereafter, Plaintiff alleges she received another letter from Medicredit with a settlement offer equal to a 50% discount on the original debt (the "**Discount Letter**") amount (Doc. 14, ¶ 9, Ex D at Doc.14-4).  As the Court has already concluded, "Plaintiff's bare allegations of injury that stem from receipt of one letter sent in violation of the FDCPA is insufficient to establish standing" (Order of Dismissal, pg. 7). The Second Complaint does not add sufficient allegations of injury to establish standing.

---

[1] These facts are a summary of the allegations of the Plaintiff's Complaint. Medicredit does not, at this time, admit or deny any of its allegations.

Plaintiff alleges that this Second Letter "was a direct invasion of Ms. Ebaugh's legally-protected right to be left alone and her right to privacy" (Doc.14, ¶ 14).  This Court correctly noted that "invasion of privacy is not a tort under Missouri law" (Order of Dismissal, Doc. 13, pg. 4). In response, Plaintiff asserts her privacy was invaded in Maryland (Doc. 14, ¶ 16).  Even in Maryland, however, invasion of privacy requires an "unreasonable intrusion." *See Household Fin. Corp. v. Bridge*, 252 Md. 531, 540-541 (1969) illustrating examples of unreasonable intrusions. Even in Maryland, receipt of one piece of mail does not establish a close relationship to the common law tort of invasion of privacy.

Plaintiff's Second Complaint also now alleges that Plaintiff incurred actual expenses of $0.68 to communicate with her (legal services[2]) attorney following the Discount Letter in support of her claim for actual damages. Within the Federal Courts, communicating with an attorney is not a damage sufficient to establish standing. *See Parker v. HSBC Mortgage Services, Inc.*, 2017 WL 513050, at *3 (E.D. Mo. Feb. 8, 2017) relying on *Dunn–Mason v. JP Morgan Chase Bank*, N.A., No. 11–cv–13419, 2013 WL 5913684, *10 (E.D. Mich. Nov. 1, 2013) and citing *Lawther v. Onewest Bank*, No. C 10–0054 RS, 2010 WL 4936797, at *7 (N.D. Cal. Nov. 30, 2010) (It is the plaintiff's obligation to point to some colorable relationship between the injury and the actions that allegedly violated the statute). The Second Complaint has not established the relationship between her injury and these damages to support her Article III standing. Should the Court conclude that the Plaintiff has standing to pursue a claim, the Second Complaint lacks sufficient factual allegations to state a claim for which relief may be granted as a matter of law.

---

[2] Plaintiff's Second Complaint removes reference to the legal services attorney in favor or "her attorney" (Doc.14, ¶ 8) and now adds that she paid a $35 retainer to that attorney (Doc.14, ¶ 10). Taking the Plaintiff's allegations as true, the attorney client relationship existed prior to August 31, 2022 (Doc.14, ¶ 8) and so did the monthly retainer. This fee should be discounted as a damage.

**LEGAL STANDARD**

This motion again challenges this Court's subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and whether the Second Complaint states a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). As before, the Court should accept as true the well-pled facts of the Complaint to determine whether it plausibly alleges subject matter jurisdiction or entitlement to relief. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) Allegations that "are mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009). The Second Complaint lacks the necessary factual allegations to avoid dismissal, again.

**ARGUMENT**

**I.    PLAINTIFF'S COMPLAINT DOES NOT ALLEGE FACTS CLEARLY DEMONSTRATING HER STANDING UNDER ARTICLE III.**

To establish standing, Plaintiff must show: (i) that she "suffered an injury in fact that is concrete, particularized, and actual or imminent"; (ii) that the injury likely was caused by Defendant; and (iii) that judicial relief likely would redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiff, as the party invoking federal jurisdiction, "bears the burden of establishing" all three elements I*d.* at 561.

A statutory violation is not an automatic injury in fact. *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2205 (2021). "[T]he injury-in-fact requirement requires a plaintiff to allege an injury that is both 'concrete and particularized.'" *Spokeo, Inc. v. Robins,* 578 U.S. 330, 341 (2016) (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 180–81 (2000)). As outlined by the Court concrete injuries can be both tangible or intangible. *Demarais v. Gurstel Chargo, P.A.,* 869 F.3d 685, 690 (8th Cir. 2017). The Second Complaint has alleged an intangible invasion of privacy and a tangible monetary harm.

### A. Invasion of Privacy

As a Court sitting in Missouri, it is appropriate to apply the substantive law of land where the injury occurred. *See Kennedy v. Dixon*, 439 S.W.2d 173, 184 (Mo. 1969) adopting the in § 145 Restatement 2d Conflict of Laws rule. Plaintiff has alleged that her invasion of privacy occurred in Maryland (Doc. 14, ¶ 16). Within Maryland, the elements of an invasion of privacy include an intentional intrusion or prying upon something which is and is entitled to be private in a manner which is highly offensive to a reasonable person. *See Furman v. Sheppard*, 130 Md. App. 67, 744 (2000). Maryland recognizes four forms of invasion of privacy, including intrusion upon seclusion. *Household Fin. Corp,* 252 Md at 534 (1969). To establish the claim, the Second Complaint must establish that there was a substantial intrusion" intentional intrusion upon Plaintiff's solitude, seclusion, private affairs, or concerns in a manner that would be "highly offensive to a reasonable person." *Whye v. Concentra Health Servs., Inc.*, 2013 WL 5375167, at *14 (D. Md. Sept. 24, 2013), aff'd, 583 Fed. App'x 159 (4th Cir. 2014) (quoting Restatement § 652B, cmt. d); *Gamble v. Fradkin & Weber, P.A.*, 846 F. Supp. 2d 377, 383 (D. Md. 2012).

Conduct that this Plaintiff finds offensive, but that would not offend a reasonable person, cannot establish intrusion upon seclusion *Whye. at *14*. As expressed by the Maryland District Courts, knocking at the plaintiff's door, or calling the telephone "on one occasion or even two or three, to demand payment of a debt" do <u>not</u> rise to the substantial intrusion required by the Maryland standard. *Neal v. United States*, 599 F. Supp. 3d 270, 306 (D. Md. 2022) When those actions are repeated "with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded." *Id*. Thus, in Maryland, as in Missouri, there is no invasion of privacy for receipt of a single letter and the Plaintiff has only pled the arrival of a single letter.

As discussed by the United States Supreme Court in *Department of State v. Washington Post Co.*, most home addresses are available to anyone interested via the internet or published telephone directories. 456 U.S. 595, 602–03 n. 5 (1982). In addition, mail is widely disseminated based on mailing lists from pulled from countless public sources. *Id*. The mail that arrives in a mailbox from unknown sources or lists shared between vendors does not substantially impinge on seclusion, and much of it is thrown away. *Id*. The Court concluded that "the secrecy and the seclusion components of privacy" related to arriving mail was therefore minuscule. *Id.* This is not novel because mail is not inherently bothersome, intrusive, or invasive.

Court have allowed intrusion upon seclusion liability for "irritating intrusions," however, there is nothing inherently bothersome, intrusive, or invasive about a letter delivered via U.S. Mail. See *Gadelhak v. AT&T Servs., Inc.,* 950 F.3d 458, 462 (7th Cir. 2020). Intrusion is often reserved for someone opening the personal mail of another person. *See Hartford Cas. Ins. Co. v. Ted A. Greve & Associates, PA,* 742 Fed. Appx. 738, 741 (4th Cir. 2018) (with examples of intrusion of seclusion such as: physically invading a person's home or other private place, eavesdropping by wiretapping or microphones, peering through windows, persistent telephoning, unauthorized prying into a bank account, and opening personal mail of another). Consider, *Pucillo v. Nat'l Credit Sys., Inc.*, 66 F.4th 634 (7th Cir. 2023) where the delivery of two letters to Pucillo's mailbox, one year apart, was too far afield from the traditional tort of intrusion upon seclusion to allege an actionable claim. *Pucillo* at 640. The majority opinion in Pucillo offered that "[m]ail can be picked up when, if, and how often the recipient chooses…[and w]hile receiving a letter can be an irritation, we do not see an actionable analogy between a letter delivered to a mailbox and automated text messages delivered to one's cell phone. *Id.*

As a result, the contact by a single letter is not the same kind of harm recognized as an intrusion upon seclusion in Maryland.  *See Jones v. Aberdeen Proving Ground Fed. Credit Union*, 2022 WL 1017094, at *22 (D. Md. Apr. 5, 2022). The allegation of one letter received by mail lacks the volume and vicious quality required by the Maryland courts. *Id.* As presented, the Second Complaint fails to establish Article III Standing because one letter arriving silently in the mail does not represent an intrusion upon seclusion as a matter of law.

B.  **Emotional Distress Allegations**

The Second Complaint updates the Plaintiff" emotional distress to include "loss of sleep, worry and considerable upset" (Doc.14, ¶ 18).  This is further augmented by the unsupported belief that "Medicredit 'would get its way, one way or another', ultimately forcing her to pay the debt." *Id*. The Court has already ruled that allegations of "negative emotions," are insufficient to state a cognizable injury under Article III. (Doc.13, pg. 4 citing *See Ojogwu v. Rodenburg Law Firm*, 26 F.4th 457, 463 (8th Cir. 2022)) The Second Complaint does not meet the standard necessary for intangible harms to save standing because the alleged emotional distress was not (1) severe, and (2) the result of "extreme and outrageous conduct." *Buccholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 864 (6th Cir. 2020) (no standing for FDCPA plaintiff based on bare allegations of anxiety). In addition, fear of a future harm is not an injury in fact unless the future harm is "certainly impending." *Id.* citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013). The Second Complaint does not cure the emotional distress allegations sufficient to sustain Article III standing because Plaintiff does not allege facts to support that any aspect of her "emotional distress" that was severe or that it was the result of extreme or outrageous conduct.

### C. Act to Personal Detriment and Out-Of-Pocket Expenses

Plaintiff alleges the single letter "Medicredit's improper collection action caused her to act to her detriment, including expending the time, effort, and out-of-pocket expenses (legal fees and postage)" (Doc.14, ¶19). As outlined in the first motion to dismiss, an FDCPA plaintiff's retention and payment of counsel insufficient to confer standing because permitting the engagement and payment of counsel to furnish standing would "nullify the limits created under Article III." *See Ward v. Natl Patient Account Services Solutions, Inc.*, 9 F.4th 357, 363 (6th Cir. 2021). In addition, a plaintiff's decision "to hire a lawyer does not change the [standing] evaluation" because a "desire to obtain legal advice is not a reason for universal standing." *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1069 (7th Cir. 2020). Simply put, hiring a lawyer is not a harm to provide standing under Article III. *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 939 (7th Cir. 2022).

Plaintiff relies on two cases to support the argument that out of pocket expenses are sufficient to establish an injury in fact for Article III. In *Mack v. Resurgent Capital Services*, L.P., the Seventh Circuit Court of Appeals concluded, based on <u>evidence</u> submitted by the Plaintiff that by a preponderance of evidence, that standing existed because Plaintiff had to overcome significant troubles mailing letters because of family issues, that she was confused by two letters from different companies regarding the same debt so she thought she had to re-dispute her debt and she spent time, energy and money to send a letter directly to a debt collector. *Id.* 70 F.4th 395, 406-407 (7th Cir. 2023). The court relied on Mack's testimony that she was confused to connect the defendant's actions and the harm necessary for standing. In the present case, the Plaintiff fails to make that connection.

In *Walters v. Fast AC, LLC*, plaintiff (a 70 year old man with Parkinson's disease and in a wheelchair) agreed to purchase air conditioning repairs with a loan he could not afford and brought

7

action against lender for violation of the Truth in Lending Act (TILA) because the defendant lied to plaintiff, did not perform the work, and failed to provide certain disclosures about the loan. *Id.* 60 F.4th 642, 649 (11th Cir. 2023). Before the work was started, plaintiff *Walters* canceled the work but was unable to cancel the loan. The case was decided on the evidence, this time at summary judgment, that plaintiff spent multiple weeks and multiple phone calls fighting with the lending company, *Walter's* credit was negatively impacted preventing him from buying a truck or refinancing his home; he spent money faxing documents with his attorney, and he felt anxious, exploited, embarrassed, and worthless." Taken collectively, the Court concluded that *Walters* had standing to sue Fast AC, LLC.  The Second Complaint does not contain a collection of atrocities. In addition, the Court in *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, relying on *TransUnion* did not find Article III standing because plaintiff could not identify a "common-law analog" to "wasting another's time." 45 F.4th 816, 825 (5th Cir. 2022).

Based on the collection of law communicating with counsel, engagement of counsel, and payments to counsel are not "injuries" sufficient to create Article III standing. Were the rule otherwise, anyone could manufacture their own standing by hiring an attorney and thereby "nullify the limits created under Article III." *Ward*, 9 F.4th at 363. Plaintiff's attempt to cobble together a collection of "harms" related to her legal counsel does not establish her standing in this case.

## II.    PLAINTIFF'S COMPLAINT DOES NOT ALLEGE FACTS THAT STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED.

In the event the Court concludes it has subject matter jurisdiction to reach the merit's of this case, Defendant renews its motion to dismiss for failure to state a claim as expressed in the Second Complaint. To establish a claim under the FDCPA, a plaintiff must allege (1) the plaintiff is a 'consumer' within the meaning of the statute; (2) the defendant collecting the debt is a 'debt

collector' within the meaning of the statute; and (3) the defendant has violated by act or omission a provision of the FDCPA. *Somlar v. Nelnet Inc.*, 2017 WL 35703, at *2 (E.D. Mo. Jan. 4, 2017).

Plaintiff has alleged two violations of the FDCPA caused by one letter.  There are no facts contained in the allegations of the complaint, nor the attached exhibits to support these allegations. First, Plaintiff alleges that "by communicating with Plaintiff regarding this debt and demanding payment, Defendant violated §1692c(c) of the FDCPA" after Defendant received "direction to cease communications." (Doc.14, ¶ 22, 23). The complaint here outlines bare legal conclusions to support "Count I" but fails to allege facts to support the allegation that Defendant communicated directly with the Plaintiff after the direction to cease communications. The exhibit "B" that presumably illustrates this point is inconclusive as to where the Discount Letter was mailed because it is redacted. The Court, therefore, does not have factual support that the letter was issued directly to the Plaintiff, or was sent to her representative. As a result, Count I is without factual support and does not state a claim relief can be granted as a matter of law.

Plaintiff's Count II alleges that Plaintiff was represented by an attorney. However, the letter from Legal Advocates for Seniors and People with Disabilities does not identify any attorney, or law firm representing Plaintiff.  The unsigned exhibit "C" only identifies a legal director, without any indication of their status as an attorney. Plaintiff's Complaint lacks any factual allegations to establish, beyond the bare legal conclusion that she "was represented by counsel in connection with her debt."  As a result, Count II is without factual support and does not state a claim relief can be granted as a matter of law.

**CONCLUSION**

Plaintiff lacks standing lacks standing and fails to allege facts to state a plausible claim under the FDCPA. In the event the Court concludes the Court has subject matter jurisdiction, the Complaint fails to state a claim, and therefore, should be dismissed.

Respectfully submitted,

SPENCER FANE LLP

/s/ *John D. Ryan*
Scott J. Dickenson, #50478MO
John D. Ryan #51944MO
1 North Brentwood Blvd., Suite 1200
St. Louis, MO  63105
Tel: (314) 863-7733
Fax: (314) 862-4656
jryan@spencerfane.com

Attorneys for Medicredit, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of September, 2023, I filed the foregoing via the Court's CM/ECF system, which will provide electronic notice to all counsel of record.

/s/ *John D. Ryan*

SL 6129016.1