**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

Mary Ebaugh,               )
                            )
       Plaintiff,          )
                            )
       v.                 )     No.   4:23-cv-00209-MTS
                            )
Medicredit, Inc., a Missouri corporation,  )
                            )
       Defendant.       )

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

Plaintiff, Mary Ebaugh ("Ebaugh"), hereby responds in opposition to Defendant's

Medicredit, Inc.'s ("Medicredit") motion to dismiss, pursuant to Fed.R.Civ.P. Rule

12(b)(1), for lack of standing, and pursuant to Fed.R.Civ.P. Rule 12(b)(6), for failure to

state a claim (Doc. 15, 16):

**INTRODUCTION**

Defendant Medicredit, in moving for dismissal, admits that Plaintiff's Amended

Complaint alleges that Plaintiff has alleged both an intangible invasion of privacy and a

tangible monetary harm (Doc. 16 at p. 3), but argues that she has failed to alleged

"facts" and provide evidence which demonstrates that she has suffered a concrete

injury-in-fact. (Doc. 15 at pp. 1-2). But the invasion of privacy/intrusion upon seclusion

Ms. Ebaugh has alleged is more than the mere receipt of one letter: she received a

second letter, sent directly to her, <u>after</u> she had told Medicredit that it should cease

contacting her because she refused to pay the debt and that she was represented by

counsel. (Doc. 14-2, Doc. 14-3, and Doc. 14-4).

This is not simply a matter of an unsolicited letter, or phone call or text or fax; this

1

is a continued intrusion upon her seclusion after she had asserted her Congressionally-granted rights to privacy. Ms. Ebaugh does not claim that Medicredit's first letter (Doc. 14-2), and the time and expense that was incurred in responding to that first letter resulted in a tangible or intangible injury-in-fact; it is the *second* letter (Doc. 14-4), after she had told Medicredit in writing, to go away, that caused her injuries-in-fact. Absent Medicredit's second debt collection (doc. 14-4), Plaintiff would not have had to expend the money and time to try, for a second time, to stop Medicredit's collection efforts. The trouble and out-of-pocket expense associated with asserting one's rights under the FDCPA a second time, regardless of the modest dollar amount spent, are sufficient to establish Article III standing, see, Mack v. Resurgent Capital Services, L.P., 70 F.4th 395,  406-407 (7th Cir. 2023).

## **FACTUAL BACKGROUND**

Ms. Ebaugh is a low-income senior citizen from Maryland with limited assets, who fell behind on paying her bills, including a debt she allegedly owed for medical services to Dominion Hospital. (Doc. 14 at ¶ 7). At some point in time after this debt went into default, Defendant Medicredit began trying to collect this debt by sending Ms. Ebaugh a collection letter, dated July 26, 2022. (Doc. 14 at ¶ 7; Doc. 14-2). Ms. Ebaugh could not afford to pay the bill, so she consulted with Legal Advocates for Seniors and People With Disabilities ("LASPD") about her legal options. (Doc. 14 at ¶ 8). Ms. Ebaugh then engaged LASPD, as her agent, to assert her right to be left alone as to the debt she was unable to pay, and to be represented by an attorney as to that debt, as is her right under the FDCPA, see, 15 U.S.C. § 1692c; see also, Doc. 14-3.

2

Thus, on August 31, 2022, Ms. Ebaugh's LASPD attorney informed Defendant, in writing, that Ms. Ebaugh was represented by counsel and that she refused to pay the debt; the letter further directed Medicredit to cease contacting her, and to cease all further collection activities regarding the Dominion Hospital debt, because Ms. Ebaugh was forced, by her financial circumstances, to refuse to pay her unsecured debt. (Doc. 14 at ¶ 8; Doc. 14-3). In violation of §§ 1692c(c) and 1692c(a)(2) of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), Medicredit sent a second collection letter, dated October 28, 2022, directly to Ms. Ebaugh, demanding payment of the Dominion Hospital debt. (Doc. 14 at ¶ 9; Doc. 14-4).[1]

As a result of Medicredit's illegal collections actions, Ms. Ebaugh had to spend the time, effort and out-of-pocket expenses in order to mail Medicredit's second collection letter to her counsel at LASPD, so that her counsel could try to halt Medicredit's improper continued collection efforts. (Doc. 14 at ¶ 10). The time and effort includes, but is not necessarily limited to, reviewing the letter, placing it in an envelope, addressing the envelope to her attorney at LASPD, and walking to and from a U.S. Mailbox to send the letter; the out-of-pocket expenses include the cost of an envelope (approximately $.08) and postage ($.60), as well as the fees to her attorney ($35/month) (ibid.). Ms. Ebaugh's LASPD attorney then had to take the time and expense and pay the out-of-pocket costs to send a second letter to Defendant, reminding it that it should

---

1. Section 1692c(c) of the FDCPA prohibits a debt collector from communicating with a consumer after a direction to cease communications, and from continuing to demand payment of a debt that the consumer has indicated that they refuse to pay, see, 15 U.S.C. § 1692c(c); § 1692c(a)(2) of the FDCPA prohibits a debt collector from communicating with a consumer if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, see, 15 U.S.C. § 1692c(a)(2).

cease contacting Ms. Ebaugh because she refused to pay the debt and that she was represented by counsel. (Doc. 14 at ¶ 11; Doc. 14-5).

## ARGUMENT

A court deciding a facial challenge brought pursuant to Fed.R.Civ.P Rule 12(b)(1) must "[restrict] itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)", see, Carlsen v. GameStop, Inc., 833 F.3d 903, 908 (8th Cir. 2016). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'", see, Varga v. U.S. Bank National Ass'n, 764 F.3d 833, 838-39 (8th Cir. 2014), citing, Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged", see, Varga, 764 F.3d at 838-39, quoting, Twombly, 550 U.S.at 570.

Rule 8(a) of the Federal Rule of Civil Procedure provides that "[A] pleading that states a claim for relief must contain" .. . ."(1) a short and plain statement of the grounds for the court's jurisdiction" and "(2)  "a short and plain statement of the claim showing that the pleader is entitled to relief," see, Fed.R.Civ.P. 8(a). The allegations of the Complaint must also plausibly suggest that the plaintiff has a right to relief and raise that possibility above the "speculative level", see, Twombly, 550 U.S. at 555. Moreover, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court

4

to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.

**I.      Ms. Ebaugh's Amended Complaint Sets Forth Detailed Factual Allegations As To Both Tangible And Intangible Injuries-In-Fact Which Resulted From Medicredit's Illegal Collection Actions**

In order to establish that a Plaintiff has standing, pursuant to Article III of the U.S. Constitution, a plaintiff bears the burden of establishing she has a "personal stake" in the case, or an injury-in-fact, sufficient to answer the question: "What's it to you?", see, Barker v. Nestle Purina PetCare Co., 601 F. Supp. 3d 464, 468 (E.D.Mo. 2022)(Schelp, J.), citing, TransUnion v. Ramirez, 141 S. Ct. 2190, 2203, (2021). As such, a Plaintiff must show: (i) that she "suffered an injury in fact that is concrete, particularized, and actual or imminent"; (ii) that the injury likely was caused by Defendant; and (iii) that judicial relief likely would redress the injury, see, Barker, 601 F. Supp. 3d at 468, citing TransUnion, 141 S.Ct. at 2203.

As this Court noted, in its Memorandum and Order dismissing Ms. Ebaugh's initial Complaint, "[B]oth tangible and intangible injuries can be concrete", citing Demarais v. Gurstel Chargo, P.A., 869 F.3d 685, 690 (8th Cir. 2017). (Doc. 13 at p. 3). This Court went on to note that "[T]he 'most obvious' kind of concrete harms are 'traditional tangible harms, such as physical harms and monetary harms'", citing TransUnion, 141 S.Ct. at 2204, while "[I]ntangible harms, on the other hand, are concrete when the plaintiff points 'to an injury that has a 'close relationship' to a harm 'traditionally recognized as providing a basis for a lawsuit in American courts'", citing, Bassett v. Credit Bureau Services, 60 F.4th 1132, 1136 (8th Cir. 2023). (Doc. 13 at p. 3).

Ms. Ebaugh has alleged, with particularity, that she has suffered both tangible

5

and intangible harms: she has paid money out of pocket and spent time and effort as a result of Medicredit's illegal collection actions, and Medicredit's illegal collection actions – sending her a collection letter after she told them to cease contact -- invaded her privacy and intruded upon her seclusion.

> ### A.   Ms. Ebaugh's Out-Of-Pocket Expenses, As Well As The Time And Effort She Was Forced To Expend As A Result Of Medicredit's Second Collection Letter, Constitute Tangible Injuries-In-Fact

Pecuniary, tangible harms caused by a defendant are always sufficient for Article III standing, see, TransUnion, 141 S. Ct. at 2204 ("If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III"). The trouble and out-of-pocket expense associated with asserting one's rights under the FDCPA a second time, regardless of the modest dollar amount spent, are sufficient to establish Article III standing, see, Mack, 70 F.4th at 406-407; see also, Walters v. Fast AC, LLC, 60 F.4th 642, 649 (11th Cir. 2023)(". . . evidence of lost time, money and peace"  are "garden-variety injuries in fact" sufficient for Article III standing); Demarais, 869 F.3d at 692-93 (time and money spent in obtaining legal services and responding to discovery requests wrongly sent regarding a dismissed collection lawsuit constituted a tangible injury-in-fact, caused by the collector's insistence that it would proceed to trial against the consumer regarding a debt that it had no right to collect); Toste v. Beach Club at Fontainebleau Park Condominium Ass'n, 2022 U.S. App. LEXIS 25076 at [*11] (11th Cir. 2022)("time spent trying to determine the correct amount of his debt, resolve the lien, and avoid the threatened foreclosure; and emotional distress manifesting in a loss of sleep—which are sufficiently tangible to confer Article III

standing."); and <u>Losch v. Nationstar Mortg.</u>, 995 F.3d 937, 943 (11th Cir. 2021) ("[T]here is no question that wasted time is a concrete harm …").

 Ms. Ebaugh's Amended Complaint set forth tangible injuries: she alleges that she had to spend the time, effort and out-of-pocket expenses in order to mail Medicredit's second collection letter to her counsel at LASPD, so that her counsel could halt Medicredit's improper collection efforts, including reviewing the letter, placing it in an envelope, addressing the envelope to her attorney at LASPD, and walking to and from a U.S. Mailbox to send the letter, the cost of an envelope (approximately $.08) and postage ($.60), as well as the fees to her attorney ($35/month) (Doc. 14 at ¶ 11). Ms. Ebaugh's LASPD attorney then had to take the time and expense and pay the out-of-pocket costs to send a second letter Defendant, reminding it that it should cease contacting Ms. Ebaugh because she refused to pay the debt and that she was represented by counsel. (Doc. 14 at ¶ 11; Doc. 14-5). All of these injuries are sufficient for Article III standing.

 Medicredit argues, however, that Ms. Ebaugh injuries are nothing more than retaining and communicating with counsel, which are not injuries sufficient to confer Article III standing. (Doc. 16 at pp. 7-8). That might have been true, if Ms. Ebaugh's claim related solely to the actions she took in response to Medicredit's first letter (Doc. 14-2) and the time and expense that was incurred in retaining counsel to respond to the first letter. Ms. Ebaugh's claims, however, relate to Medicredit's second letter – the letter sent to her directly, after she had told Medicredit that she refused to pay the debt, and that collection communications should cease. Absent Medicredit's second debt collection communication (Doc. 14-4), Plaintiff would not have had to expend the money

and time to try, for a second time, to stop Medicredit's collection efforts. The trouble and out-of-pocket expense associated with asserting one's rights under the FDCPA a second time, regardless of the modest dollar amount spent, are sufficient to establish Article III standing, see, Mack, 70 F.4th at 406-407.[2]

> **B.    Ms. Ebaugh's Amended Complaint Set Forth That Medicredit's Collection Actions Caused Intangible Harms Such As Of Invasion of Privacy, Intrusion Upon Her Seclusion, And Emotional Distress.**

In enacting the FDCPA, Congress expressly set forth that the statute was intended to prevent "abusive practices":

> There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to **invasions of individual privacy**.

See, 15 U.S.C. §1692(a)(Abusive Practices)(emphasis added). Thus, §1692c of the FDCPA limits the manner in which debt collectors may communicate with consumers:

§ 1692c(c) of the FDCPA prohibits a debt collector from communicating with a consumer who has "notified a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer", see, 15 U.S.C. § 1692c(c), and §1692c(a)(2) of the FDCPA prohibits a debt collector from communicating with a consumer if the debt collector

---

2.  Medicredit attempts to distinguish Mack by claiming that the Seventh Circuit relied on "evidence" submitted by the plaintiff there. (Doc. 16 at p.7). Fed.R.Civ.P. Rule 8(a)(1) simply does not require a plaintiff to submit "evidence" in a Complaint – only a short and plain statement of the grounds for the court's jurisdiction, which Ms. Ebaugh has done in her Amended Complaint, see, Doc. 14 at ¶¶ 1, 10-19. Mack, moreover, was in a completely different procedural posture from this matter: discovery had been completed in Mack, and the evidence as to Ms. Mack's time, effort, and expense came from deposition testimony taken as part of the class certification process, not from her complaint; the Fed.R.Civ.P. Rule 12(b)(1) motion in Mack was filed after two and a half years of litigation, see, docket, Mack v. Resurgent Capital Services, et al., N.D.Ill. No. 1:18-cv-6300.

knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, see, 15 U.S.C. § 1692c(a)(2).

Medicredit's continued direct collection actions – sending a second letter after having been informed in writing that it should cease contacting Ms. Ebaugh because she refused to pay the debt and that she was represented by counsel -- invaded Ms. Ebaugh's right to counsel, intruded upon her seclusion, and was a direct invasion of Ms. Ebaugh's legally-protected right to be left alone and her right to privacy – rights granted to consumers under the common law and § 1692c of the FDCPA, see, Persinger v. Southwest Credit Sys., 20 F.4th 1184 (7th Cir. 2021), see also, Lupia v. Medicredit, 8 F.4th 1184, 1193 (10th Cir. 2021).

As this Court acknowledged, in its Memorandum and Order,

> . . . a plaintiff may establish standing through an "intangible" harm if there is a "common-law analogue," *Bassett*, 60 F.4th .at 1135, for the plaintiff's asserted injury, such as intrusion upon seclusion," *TransUnion*, 141 S.C.t at 2204.

Doc. 13 at p. 4.[3]

---

3.  While this Court faulted plaintiff for alleging invasion of privacy as the common law analogue in her initial complaint, noting that invasion of privacy is not a tort under Missouri law (Doc. 13 at p. 4), plaintiff notes that the tort of invasion of privacy, which *includes* intrusion upon the seclusion of another, see, Restatement (Second) of Torts § 652A (Am.L.Inst. 1977), has long been recognized at common law, see, Persinger, 20 F.4th at 1191-1192. Moreover, as set forth in her Amended Complaint Ms. Ebaugh is a resident of Maryland, and her privacy was invaded in Maryland as a result of Medicredit's second collection letter, sent directly to her, rather than to her counsel. The common law tort of invasion of privacy, which includes intrusion upon seclusion, is recognized at law in Maryland, see, Carr v. Watkins, 227 Md. 578, 177 A.2d 841 (1961); see also, Maharaj v. Smith Ballooning, LLC, 2023 Md.App. LEXIS 37 at [*21] (Md.App. 2023). (Doc. 14 at ¶ 16). Based solely upon its ipse dixit, Medicredit argues for the application of the substantive law of Missouri (Doc. 16 at p. 4), but the application of

9

This Court found, however, that the "manner of communication" .. . . is what dooms standing . . " for Ms. Ebaugh. (Doc. 13 at p. 5). Specifically, this Court found that the ". . . mere receipt of an unsolicited letter, without any other factual allegations, in insufficient to establish injury as the type of intrusive privacy invasion the tort of intrusion upon seclusion seeks to prevent." (Doc. 13 at p. 6).

Ms. Ebaugh's FDCPA claims, however, are not merely about the receipt of a single, unsolicited letter. Ms. Ebaugh's FDCPA claims arose as a result of Medicredit's continued intrusion upon her seclusion after she had asserted her rights to privacy – a right Congress granted consumers when it enacted the FDCPA. Ms. Ebaugh does not claim that Medicredit's first letter (Doc. 14-2) intruded upon her seclusion; rather, it was Medicredit's second letter (Doc. 14-4), sent after she had explicitly told Medicredit, in writing, that it should go away, which intruded upon her seclusion and resulted in an intangible injury-in-fact.[4]  A debt collector gets one free bite at the apple; after a consumer has asserted her right to be left alone and to be represented by counsel, it does not get a second bite.

In moving to dismiss, Medicredit essentially argues that, in order to allege an injury-in-fact based upon intrusion upon seclusion, Ms. Ebaugh must allege facts that would satisfy a claim brought at common law. (Doc. 16 at pp. 4 -6). It is simply not necessary that Ms. Ebaugh allege facts showing that she would prevail if she brought a

whether Maryland or Missouri law is applied is immaterial, since Ms. Ebaugh alleged an intrusion upon seclusion in her Amended Complaint, see, Doc. 14 at ¶¶ 14, 18).

4.  Ms. Ebaugh's claim is factually distinguishable from the claim at issues in Pucillo v. Nat'l Credit Sys., 66 F.4th 634 (7th Cir. 2023). In Pucillo, the consumer had not sent any written demand directly to the debt collector, asking that collection communications cease; rather, the collection letter at issue was sent after the alleged debt had been discharged in bankruptcy, see, Pucillo, 66 F.4th at 636.

10

tort claim for invasion of privacy/intrusion upon seclusion under common law (of either Missouri or Maryland). The U.S. Supreme Court, Spokeo v. Robins, 136 S. Ct. 1540, 1549, (2016) only directed courts to analogize to harms recognized by the common law and look for a "close relationship" in kind, not degree.

For example, in Gadelhak v. AT&T Servs., 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.), cert denied, 141 S. Ct. 2552, the Seventh Circuit, in reliance upon Spokeo, held that the harm caused by receiving an unwanted text message, sent in violation of the Telephone Consumer Protection Act, bore a close relationship to the tort of "intrusion upon seclusion", because:

> [W]hen Spokeo instructs us to analogize to harms recognized by the common law, we are meant to look for a "close relationship" in kind, not degree. See, Spokeo, 136 S. Ct. at 1549. In other words, while the common law offers guidance, it does not stake out the limits of Congress's power to identify harms deserving a remedy. Congress's power is greater than that: it may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.* (alteration in original).

Gadelhak, 950 F.3d at 462-63.

The Supreme Court cited Gadelhak with approval of in TransUnion, 141 S. Ct. at 2204, recognizing that a "close relationship" between a common law tort and a statutory cause of action are sufficient for Article III standing, see, TransUnion, 141 S. Ct. at 2204 ("Spokeo does not require an exact duplicate in American history and tradition"). Indeed, the Gadelhak's "kind not degree" analysis for evaluating close relationships between statutory harms and common law analogues has been followed by the Tenth Circuit in Lupia, 8 F.4th 1184, 1191-1192; the Seventh Circuit in both Persinger, 20 F.4th 1184, 1191-92 and Ewing v. Med-1 Solutions, 24 F.4th 1146, 1151 (7th Cir. 2022); the Sixth Circuit in Ward v. NPAS, 63 F.4th 576, 580-581 (6th Cir. 2023), and was cited

by the Eighth Circuit in <u>Ojogwu v. Rodenburg Law Firm</u>, 26 F.4th 457, 463 n.4 (8th Cir. 2022).

    As she set forth in her Amended Complaint, Medicredit's collection actions alarmed, confused and emotionally distressed Ms. Ebaugh. She lost sleep, she was worried and very upset. She believed that Medicredit would continue to contact her and ignore her attorney, and that Medicredit "would get its way, one way or another", ultimately forcing her to pay the debt. (Doc. 14 at ¶ 18).[5] Medicredit's improper collection actions invaded Ms. Ebaugh's legally-protected right to privacy and intruded upon her seclusion, as well as ignoring her legally-protected right to be represented by counsel, <u>see</u>, 15 U.S.C. § 1692c. These are all intangible injuries-in-fact sufficient to support Article III standing.

## II.    Ms. Ebaugh's Complaint Sets Forth Sufficient Facts To State Claims Under §1692c(c) and § 1692c(a)(2) Of The FDCPA

    Defendant Medicredit also argues that dismissal is warranted, pursuant to Fed.R.Civ.P. Rule 12(b)(6) because Ms. Ebaugh's Amended Complaint lacks facts to support the allegation that it "communicated directly with Plaintiff" (Doc. 16 at p. 9) or that Ms. Ebaugh was represented by an attorney, <u>ibid</u>. These argument do not pass the straight-face" test.

---

5.  There is no rational reason to assume that a letter is somehow less intrusive than a telephone call or a text. A person can let a telephone call - especially from an unknown number - go unanswered or go to voicemail; texts can be muted or blocked. But letters are a serious business. Letters are more formal, and, for a consumer who is receiving communications from debt collectors, more upsetting. Ms. Ebaugh was certainly upset by Medicredit's second letter, a letter she absolutely should not have received. And, as the dissent in <u>Pucillo</u> pointed out: ". . . while it is true that the mail is delivered to a mailbox and not one's phone, one must retrieve and read the mail at some point because United States mail is still a recognized way or providing legal notice and conducting business, ignored at one's own peril", <u>see</u>, <u>Pucillo</u>, 66 F.th at 645.

A Rule 12(b)(6) motion tests the sufficiency of the complaint, not the merits of the case, see, Bramlet v. Wilson, 495 F.2d 714, 716 (8th Cir. 1974). The Court must accept the complaint's well-pleaded factual allegations as true and draw all reasonable inferences in plaintiff's favor, see, Twombly, 550 U.S. at 555-56. To survive a motion to dismiss, a complaint must contain sufficient facts to state a facially plausible claim for relief, see, Iqbal, 129 S.Ct. at 1949 (2009).

Ms. Ebaugh's Amended Complaint clearly states that the letter was sent "directly" to Ms. Ebaugh, see, Doc. 14 at ¶ 9; Plaintiff's home address was redacted from the Exhibit to protect her privacy and to comply with Local Rule 2.17. Medicredit -- which sent the letter – certainly has access to the letter that it sent and is well-aware of to whom it was mailed. An unredacted copy -- showing that the letter was addressed to Ms. Ebaugh at her home address -- can be produced in discovery.

Medicredit also claims that there is no factual support for Ms. Ebaugh's claim that it contacted her after it was notified that she was represented by an attorney. (Doc. 16 at p. 9). The document attended to Ms. Ebaugh's Amended Complaint clearly set forth facts that she was represented by counsel as to this debt, see, Doc. 14 at ¶ 8, and the letter sent to Medicredit made this unequivocally clear, see, Doc. 14-3:

- the letter was from the "**Legal** Advocates for Seniors And People with Disabilities";

- the letter explained that Ms. Ebaugh had retained LASPD for "**legal** services" and was signed by a "**Legal** Director", Donald Leibsker[6]; and

- the letter included a "Consent Form for **Legal** Representation",

---

6.  Even the most cursory 10 second search of the website maintained by the Attorney Registration & Disciplinary Commission of the Supreme Court of Illinois (iardc.org) would show that Mr. Leibsker is an attorney authorized to practice law, with an office at the address on the letter sent to Medicredit.

see, Doc. 14-3.

Thus, Ms. Ebaugh's letter put Medicredit on notice that she should not be contacted directly regarding this debt and clearly provided the name and contact information for her attorney which, pursuant to §1692c(a)(2) of the FDCPA, required Medicredit to cease contacting her directly in an attempt to collect the debt. Ms. Ebaugh has clearly stated claims upon which relief may be granted, and dismissal pursuant to Fed.R.Civ.P. Rule 12(b)(6), based on Defendant's novel and unfounded arguments, is unwarranted.

## CONCLUSION

Ms. Ebaugh has set forth sufficient facts as to her injuries-in-fact to survive Medicredit's Fed.R.Civ.P. Rule 12(b)(1) motion, and its Fed.R.Civ.P. Rule 12(b)(6) motion is not well taken and does not merit consideration. Defendant's motion to dismiss (Doc. 15, 16) should be denied.

Respectfully submitted,
Mary, Ebaugh,

By: s/ David J. Philipps_____
One of Plaintiff's Attorneys

Dated: September 27, 2023

David J. Philipps     (Ill. Bar No. 06196285)
Mary E. Philipps     (Ill. Bar No. 06197113)
Angie K. Robertson (Ill. Bar No. 06302858)
Philipps & Philipps, Ltd.
9760 S. Roberts Road
Suite One
Palos Hills, Illinois 60465
(708) 974-2900
(708) 974-2907 (FAX)
davephilipps@aol.com
mephilipps@aol.com
angie@philippslegal.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 27, 2023 a copy of the foregoing **Plaintiff's Response To Defendant's Motion to Dismiss Amended Complaint** was filed with the District Court.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

John D. Ryan                                    jryan@spencerfane.com
Joshua C. Dickinson                      jdickinson@spencerfane.com
Spencer Fane, LLP
1 North Brentwood Boulevard
Suite 1200
St. Louis, Missouri 63105


s/ David J. Philipps_____
David J. Philipps
Philipps & Philipps, Ltd.
9760 South Roberts Road
Suite One
Palos Hills, Illinois 60465
(708) 974-2900
(708) 974-2907 (FAX)
davephilipps@aol.com