**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARY EBAUGH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:23-cv-00209-MTS |
| | ) | |
| MEDICREDIT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This action arising under the Fair Debt Collection Practices Act is before the Court on Defendant Medicredit, Inc.'s Motion to Dismiss Plaintiff Mary Ebaugh's Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction or, alternatively, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  The Court previously granted Defendant's Motion to Dismiss Plaintiff's original Complaint, after concluding that Plaintiff's allegations in the original Complaint "d[id] not show she suffered a concrete injury in-fact as a result of the alleged statutory violations."  Doc. [13] at 7 (2023 WL 5289226).  That is, she did not show she had standing.  The Court provided Plaintiff leave to file an Amended Complaint, which she did.  After reviewing the Amended Complaint, its exhibits, and the briefing on the instant Motion, the Court concludes Plaintiff has failed again to show she suffered a concrete injury in-fact as a result of the violations of the FDCPA she alleges.  Therefore, she still has not shown she has standing to bring this action.

Plaintiff's factual allegations remain largely unchanged, but Plaintiff's new allegations recast the allegedly FDCPA-violating letter in a more sinister light.  Unlike her original Complaint, the Amended Complaint repeatedly refers to the letter at issue as the *second letter*.  But this second letter was the *only* letter whose receipt violated the FDCPA.  Nothing prevented Defendant from sending the first letter it sent to Plaintiff.  Plaintiff's Amended Complaint, after all, acknowledges that she does in fact owe the debt at issue. The Court previously concluded that the mere receipt of an unsolicited letter, absent some extraordinary circumstance, was insufficient to establish injury akin to the type of intrusive privacy invasion the tort of intrusion upon seclusion seeks to prevent. *See Ebaugh v. Medicredit, Inc.*, 4:23-cv-0209-MTS, 2023 WL 5289226, at *3 (E.D. Mo. Aug. 17, 2023).  Plaintiff has not shown that extraordinary circumstance in her Amended Complaint.   The Court concludes her new allegation that the letter caused her "considerable upset" along with "loss of sleep" and "worry" are insufficient.  *See* Doc [14] ¶ 18.  "[S]tress by itself with no physical manifestations and no qualified medical diagnosis" do not "amount to a concrete harm."  *Ojogwu v. Rodenburg L. Firm*, 26 F.4th 457, 463 (8th Cir. 2022) (quoting *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021)).

In her briefing Plaintiff also points out that her Amended Complaint makes hardier allegations related to Plaintiff's tangible losses.  Plaintiff states that she "had to spend the time, effort (reviewing the letter, placing it in an envelope, addressing the envelope to her attorney at LASPD, and walking to and from a U.S. Mailbox, and out-of-pocket expenses of an envelope (approximately $.08) and postage ($.60), as well as the fees to her

attorney ($35/month), in order to mail Medicredit's second collection letter to her counsel at LASPD, so that her counsel could halt Medicredit's improper collection efforts."  Doc. [14] ¶ 10.   She states that the "trouble and out-of-pocket expense associated with asserting one's right under the FDCPA a second time, regardless of the modest dollar amount spent, are sufficient to establish Article III standing."  Doc. [17] at 8.  That surely must be incorrect.

If Plaintiff were correct, then a plaintiff *always* could establish standing after receiving a letter that violated the FDCPA.  Simply receive a single FDCPA violative letter, go through the "trouble" and "expense" of sending a single letter in response (in the hopes of stopping the collector from sending any more letters), and then file your action against the collector in federal court with your standing guaranteed.  That cannot be enough to satisfy Article III without something more.  *Cf. Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) ("[R]espondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.").

Nor is it enough to establish standing by speaking with or hiring an attorney.  *See Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000) ("[A]n interest that is merely a 'byproduct' of the suit itself cannot give rise to a cognizable injury in fact for Article III standing purposes."); *see also Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, 9 F.4th 357, 363 (6th Cir. 2021) ("[A]pplying [Plaintiff's] logic to any plaintiff who hires counsel to affirmatively pursue a claim would nullify the limits

created under Article III.  Therefore, [Plaintiff] cannot show concrete harm simply by pointing to the cost of hiring counsel." (internal citations omitted)).

For these reasons, and many of the ones explained by the Court in its Memorandum and Order granting Defendant's Motion to Dismiss Plaintiff's original Complaint,

**IT IS HEREBY ORDERED** that Defendant Medicredit, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint, Doc. [15], is **GRANTED**.

An Order of Dismissal dismissing this action without prejudice will be filed herewith.

Dated this 20th day of March 2024.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE

- 4 -